United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

P.F.,[1]

Plaintiff,

v.

SSA COMMISSIONER,

Defendant.

Case No. 25-cv-03174-PHK

**ORDER REVERSING AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

Re: Dkts. 7, 8

## INTRODUCTION

Plaintiff P.F. ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), seeking judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's applications for disability insurance benefits. [Dkt. 1]. The Parties have consented to proceed before a Magistrate Judge for all purposes, including the entry of final judgment, under 28 U.S.C. § 636(c). *See* Dkts. 4, 5. Plaintiff has filed an Opening Brief. [Dkt. 7]. The Commissioner has filed an Opposition Brief [Dkt. 8] and the Administrative Record [Dkt. 6 (hereinafter "AR")]. Plaintiff has also filed a reply brief. [Dkt. 9].

After carefully analyzing the briefs, the record, and the applicable law, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further proceedings consistent with this Order**.**

/ / /

[1] In actions involving requested review of a decision by the Commissioner of the Social Security Administration, the Court generally uses the first name and last name initials of the plaintiff in the Court's public orders out of an abundance of caution and regard for the plaintiff's potential privacy concerns.

**PROCEDURAL HISTORY**

On June 3, 2022, Plaintiff (a 62-year-old woman) filed an initial claim for disability status with the Commissioner of Social Security on account of her chronic back pain, lumbar facet arthropathy, degenerative changes in hip, degenerative changes in spine, lumbar facet syndrome, lumbar spondylosis, lesion on her kidney, and lupus disease. [AR 108, 234, 293].

Plaintiff's claim was denied both initially on November 21, 2022, and on reconsideration on May 9, 2023. [AR 108, 119]. Following a March 28, 2024 hearing before an Administrative Law Judge ("ALJ"), that ALJ issued a written decision (dated April 9, 2024) in which the ALJ found Plaintiff was not disabled. [AR 28, 37, 45]. On February 27, 2025, the Appeals Council denied Plaintiff's request for review, at which point the ALJ's decision became the final decision of the Commissioner. [AR 1-4].

On April 9, 2025, Plaintiff filed the complaint in the instant action seeking this Court's review of the Commissioner's final decision. [Dkt. 1].

**FACTUAL BACKGROUND**

Plaintiff injured her back in a car accident in 1987 resulting in her undergoing a lumbar fusion surgery in 2014. [AR 485]. Plaintiff initially fully recovered from her spinal surgery, but she began to experience severe back pain in 2016 due to a loosening of one of her spinal screws. [AR 485, 1006]. Plaintiff underwent a second surgery in December 2017 to remove her spinal fusion hardware. [AR 575]. Following this second surgery, Plaintiff began working part-time with modified responsibilities. [AR 1050-52]. Due to continuing pain, Plaintiff's modified work hours and duties were continually extended by Dr. Santokh Bhullar (a physician at Kaiser Permanente). [AR 900, 921-24, 965, 1003, 1032]. On February 22, 2022, Dr. Vitto (another treating physician at Kaiser) took Plaintiff entirely off work due to her complaints of pain even while working part time. [AR 822-23].

Plaintiff has alleged that following her second surgery she continued to experience severe pain and was unable to commute to and from work – as a result of which, her employer allowed her to work remotely, reduced her hours, and modified her work duties. [AR 52]. Plaintiff testified that she never returned to full-time work and that, immediately following her surgery in 2017, she

worked twenty hours weekly in hour long intervals punctuated with time to lay down. *Id.* Plaintiff testified that she later began working thirty hours weekly to complete the implementation of a new work system. However, following that new work system's implementation "it became very difficult to try and complete these hours" and, consequently, Plaintiff decreased her weekly hours back to twenty. *Id.*

Despite decreasing her work hours, Plaintiff avers that to continue working she had to increase her pain medication which irritated her kidney tumor causing her to urinate blood. [AR 54]. Plaintiff attests that, to stop these complications, her doctor recommended reducing her use of pain medication. [AR 53]. However, Plaintiff testified that trying to work while managing her pain with this lower dosage "just got to be too much" and so she stopped working entirely in 2022. [AR 53-54].

Since 2020, Plaintiff has undergone extensive medical treatments to control her pain including cortisone injections in both her hips, ablations, and most recently prolotherapy. [AR 486, 629, 645, 711, 814, 820, 832, 931, 1598]. Plaintiff attests that the cortisone shots have become increasingly less effective at managing her pain, causing her to seek other treatments. [AR 54]. Additionally, Plaintiff attests that she currently takes seven and a half milligrams of oxycodone every four hours for her pain, for a total of seven to eight tablets a day. [AR 61]. Nonetheless, Plaintiff testifies that due to her pain she spends fifteen to eighteen hours a day in bed. [AR 57]. Furthermore, she avers that she cannot complete any task without sitting within the hour, nor can she walk a block and half without severe swelling. [AR 57, 60]. She also testifies that she has trouble completing everyday tasks such as grocery shopping, showering, and visiting her grand-niece. [AR 57].

Because of her physical conditions and persistent pain, Plaintiff has sought disability insurance benefits and disability status starting from the day her doctor took her off work on February 24, 2022 ("alleged disability onset date").

**STANDARD OF REVIEW**

Social Security Commissioners follow a five-step, sequential evaluation process for determining the merits of claimants' disability applications. 20 C.F.R. §§ 404.1520. The five-step

analysis requires the ALJ to consider whether the claimant: (1) has engaged in "substantial gainful activity" during the alleged period of disability; (2) has a medically determinable impairment or combination of such impairments that is "severe;" (3) has a condition that meets or equals the severity of a listed impairment; (4) has the residual functional capacity ("RFC") to return to their past relevant work; and, if not, (5) can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 & n.3 (9th Cir. 2023).

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a hearing." 42 U.S.C. § 405(g). The Court's review in such cases is limited to determining: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."); *accord Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022); *see generally* 42 U.S.C. § 405(g).

In evaluating whether substantial evidence supports a finding, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Any conflict in the evidence is to be resolved by the ALJ, and not the Court. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."). "Substantial evidence" is 'more than a mere scintilla' but only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Woods*, 32 F.4th at 788 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015)); *see Biestek*, 587 U.S. at 103 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").

The Court reviews only the reasons provided by the ALJ in the disability determination and

may not affirm the ALJ on a ground upon which he did not rely. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003).

**ANALYSIS**

The ALJ's written decision under review followed the Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's application. AR 3-36; *see* 20 C.F.R. §§ 404.1520(a)(4). Under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four. *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)). The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient RFC to perform work in the national economy, given the claimant's age, education, and work experience. *Id.*

A finding that a claimant is "disabled" or "not disabled" at any point in the five-step review is conclusive and terminates the analysis. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§ 423(d)(1)(A), (2)(A).

Plaintiff challenges the ALJ's decision (which became the Commissioner's final decision for purposes of judicial review) on five grounds. [Dkt. 7 at 2]. First, Plaintiff argues that the ALJ "failed to provide clear, convincing, and well-supported reasons for discounting Plaintiff's allegations of pain and dysfunction." *Id.* Second, Plaintiff argues that the ALJ erred by "fail[ing] to evaluate the treating medical source opinion of Santokh Bhullar, M.D." *Id.* Third, Plaintiff argues that the ALJ erred by "fail[ing] to evaluate the examining medical source opinion of Dr. Salamacha." *Id.* Fourth, Plaintiff argues that "the ALJ's step four finding was not supported by substantial evidence." *Id.* Fifth, Plaintiff argues that "[t]he Appeals Council failed to properly evaluate the new and material evidence submitted by Plaintiff." *Id.* Plaintiff asks the Court to remand the case to the Commissioner for further administrative proceeding due to these errors in evaluating Plaintiff's disability application. *Id.* at 18.

The Commissioner argues, in response, that the ALJ properly considered the entire

evidentiary record and followed the applicable, controlling law in determining that Plaintiff is not disabled for purposes of the Act. [Dkt. 8 at 1-6].

The Court addresses each of Plaintiff's asserted grounds for reversal in turn.

## I. WHETHER THE ALJ ERRED IN EVALUATING PLAINTIFF'S CREDIBILITY

As summarized above, Plaintiff's first assignment of error is based on the ALJ's asserted failure to provide "specific, clear or convincing reasons" for discounting Plaintiff's allegations and testimony relating to the severity of her physical impairments. [Dkt. 7 at 3-6]. Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ improperly discounted Plaintiff's allegations and testimony regarding the severity of her symptoms. *Id.*

"[S]ubstantial evidence does not support an ALJ's RFC assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2023) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The Ninth Circuit has established a two-part analysis for determining the extent to which a claimant's symptoms testimony must be credited. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). "If the claimant meets the first step of this analysis and there is no evidence of malingering, [then in the second step] the ALJ can reject the claimant's testimony about the severity of their symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15) (alteration omitted).

The "clear and convincing" standard requires the ALJ to "specifically identify" which portions of the claimant's testimony the ALJ finds "not to be credible" and "explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102) (remaining citations omitted). It is not sufficient for an ALJ to "simply recit[e] the medical evidence in support of his or her residual functional determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social

Security cases.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).

"An ALJ may consider a range of factors in assessing credibility, including '(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996)). However, the ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Smartt*, 53 F.4th at 494 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Nor may the ALJ "justify a credibility finding 'by ignoring competent evidence in the record that suggests another result.'" *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

**ALJ's Specificity**

The ALJ made a preliminary finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR 32]. Accordingly, under the Ninth Circuit's framework for determining the extent to which Plaintiff's testimony may be discounted, the ALJ had to present "specific, clear, and convincing" reasons for discounting Plaintiff's pain testimony. *Ferguson*, 95 F.4th at 1199. Here, because the ALJ did not specifically identify which of Plaintiff's statements were not credible, the ALJ did not provide sufficiently specific reasons for discounting Plaintiff's pain testimony.

In *Brown-Hunter v. Colvin*, the Ninth Circuit remanded the plaintiff's case because the court found the ALJ did not provide specific, clear, and convincing reasons for discounting the plaintiff's pain testimony. 806 F.3d at 495. In *Brown-Hunter*, the ALJ's analysis began by stating the plaintiff's RFC and then summarized the medical evidence to support this determination. *Id.* at 494. The Ninth Circuit found that the ALJ erred by failing to identify which of plaintiff's testimony on specific symptoms were discounted and by failing to link the medical record to these discounted symptoms. *Id.* at 495. The Ninth Circuit found the ALJ's analysis legally insufficient stating:

> We reject the Commissioner's argument . . . that because the ALJ "set out his RFC

> and summarized the evidence supporting his determination" we can infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence." We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting Brown–Hunter's pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony.

*Id*. at 494 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)).

Here, the ALJ's written decision follows the same analytical approach which the Ninth Circuit found legally inadequate in *Brown-Hunter*. Here, as in *Brown-Hunter,* the ALJ begins by stating Plaintiff's RFC and asserting the legal requirement to consider all of Plaintiff's symptoms. [AR 31]. The ALJ then briefly summarizes Plaintiff's underlying medical conditions and alleged symptoms before stating that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimants statements concerning the intensity, persistence, and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[2] [AR 32]. The ALJ then states that Plaintiff's "radiographic studies" and "physical examinations findings" are not consistent with the severity of Plaintiff's symptoms and provides a detailed summary of Plaintiff's medical record. [AR 32-35]. The ALJ finds that Plaintiff's "allegations are not entirely consistent with the longitudinal and objective medical evidence of record" without specifying which allegations are at issue and which medical evidence of record is "not entirely consistent" with those allegations. [AR 35]. The ALJ concludes by finding the record supports the ALJ's RFC determination, while stating that even though Plaintiff experiences "some levels of pain and functional limitation" those are "only to the extent described

[2] The language used by the ALJ here is apparently boilerplate which has been discussed in prior Ninth Circuit opinions. For example, in *Trevizo*, the ALJ's written decision in that case used the exact same sentence ("After careful consideration of the evidence …"). 871 F.3d at 678. In *Trevizo*, the Ninth Circuit discourages ALJ's from using this boilerplate language, noting that although the use of this language "is not itself reversible error" it nonetheless "inverts the responsibility of the ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC." *Id.* at 678 n.6 (emphasis in original). The Ninth Circuit held in *Trevizo* that the use of this boilerplate (as was done here) "indicates that [the ALJ] is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do." *Id.* The ALJ's analysis here is thus further weakened in light of the use of this deprecated analytical approach and boilerplate.

in the residual functional capacity" found by the ALJ. [AR 35].

Additionally, while the ALJ has identified two specific reasons for discounting Plaintiff's testimony (inconsistencies between Plaintiff's symptoms and radiographic scans and physical examinations) the ALJ has not identified *which* of Plaintiff's pain testimony he is discounting nor explained *which* of these scans and physical examinations are inconsistent with this unspecified testimony. [AR 32]. Accordingly, the ALJ's credibility finding is not supported substantial evidence because the ALJ has not identified the specific testimony being discounted and the specific evidence that contradicts the testimony. *See Lambert*, 980 F.3d at 1270, 1277-78 (holding that the ALJ's opinion was not sufficiently specific to allow meaningful review because despite providing "four high-level reasons as to why Lambert's allegations were 'less than fully consistent with the evidence'" and despite providing a "relatively detailed overview of Lambert's medical history" the ALJ never explained which testimony was not credible nor which evidence contradicted that testimony).

The written decision only specifically references Plaintiff's testimony in that "she has 4 bulging discs in her spine, with one of the discs showing deterioration above the level of the previous fusion." [AR 32]. The ALJ notes this statement "seem[ed] to be supported" by a 2019 MRI but found that the scans showed this deterioration was "minimal." [AR 33]. In this analysis, the written decision does not provide specific reasons for discounting Plaintiff's pain testimony, because the written decision does not identify an inconsistency between Plaintiff's testimony that there is a progression of deterioration in her spine and Plaintiff's scans. [AR 32-33]. Furthermore, in this testimony (again the only testimony specifically addressed by the written decision), Plaintiff is not testifying as to her complaints of pain, but rather is testifying as to her understanding of the progression of her underlying medical condition. *Id.* Therefore, the written decision's analysis of only this portion of Plaintiff's testimony facially fails to show how or which of Plaintiff's pain testimony the ALJ was discounting for lack of credibility.

Furthermore, even if the written decision had specified which of Plaintiff's pain testimony was being discounted, the written decision failed to explain which of the radiographic scans or physical examinations conflicted with any such testimony. *See Brown-Hunter*, 806 F.3d at 494.

The written decision states that "[c]laimant's MRI shows that her condition has been essentially stable since 2016 when she was able to engage in SGA [(significant gainful activity)]" without an explanation linking the radiographic scans and physical examinations to any of Plaintiff's pain testimony. [AR 33]. The written decision's reliance on the general stability of MRI scans does not provide specific, clear or convincing evidence that Plaintiff's pain testimony is not credible. *See Brown-Hunter*, 806 F.3d at 494. Therefore, in evaluating the credibility of Plaintiff's pain testimony, the written decision committed legal error by failing to specifically explain which of the medical evidence discredits Plaintiff's unspecified testimony. *Ferguson v. O'Malley*, 95 F.4th at 1199.

The legal error in the written decision credibility analysis is not harmless error, because the lack of specificity in evaluating Plaintiff's subjective pain testimony does not allow "the agency's path [to] reasonably be discerned." *Id.* at 495 (quoting *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004)). A court "cannot substitute our conclusions for the ALJ's . . . [a]lthough the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Id.* (quotation omitted). Accordingly, the written decision's credibility determination and the consequent RFC which relied at least in part on the rejection of Plaintiff's testimony resulted from legally erroneous analysis which requires a remand for further proceedings.

**ALJ's Reliance on Objective Medical Evidence**

An ALJ cannot discount a claimant's subjective pain testimony based solely on an absence of medical evidence fully corroborating the extent of the claimant's claim. *Smartt*, 53 F.4th at 494; *see also Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in the testimony."). As noted above, the written decision summarizes medical evidence in the record and then concludes that Plaintiff's "allegations are not entirely consistent with the longitudinal and objective medical evidence of record." [AR 35]. The written decision does not identify specific conflicts in Plaintiff's testimony and conduct or any internal contradictions in the testimony. Further, the record does not include any finding as to any reputation for dishonesty.

In briefing before this Court, the Commissioner argues the ALJ based their credibility determination not just on the medical scans, but on Plaintiff's work history and successful pain treatments. [Dkt. 8 at 3-4]. However, the written decision does not analyze Plaintiff's work history or successful pain treatments in the context of analyzing Plaintiff's pain testimony. A reviewing court is "constrained to review the reasons the ALJ asserts" in the written decision itself, without consideration of arguments asserted by the ALJ's counsel in later briefs. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). While the written decision references an MRI scan showing that Plaintiff's "condition has been essentially stable since 2016 when she was able to engage in substantial activity (SGA)," that one-sentence reference to SGA is plainly not an evaluation of credibility contrasting Plaintiff's current testimony with Plaintiff's ability to work with the same level of pain in 2016. AR 33; *see Burrell*, 775 F.3d at 1138-39 (holding that the ALJ's credibility determination was not based on substantial evidence partially because "[a]lthough the ALJ made findings . . . concerning Claimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings. For that reason alone, we reject the government's argument."). Therefore, under *Burrell*, the written decision's failure to specifically evaluate credibility based on the stability shown in the scan prevents the Court from affirming the ALJ's decision based on the Commissioner's *post hoc* rationales (not found in the written decision) regarding work history and successful treatments.

Similarly, the Commissioner now argues that the ALJ also found Plaintiff's testimony not credible because of Plaintiff's positive response to pain treatment. [Dkt. 8 at 3]. As with the previous argument, the ALJ never based a credibility determination on Plaintiff's positive response to pain treatment. Rather, the written decision merely states that "the medical evidence indicates that the claimant has received multiple procedures in an attempt to control her subjective experience of pain, but clinical and objective findings on examination remain relatively normal." [AR 33]. Not only is this analysis plainly not a credibility determination linked to any of Plaintiff's specific testimony, if anything this portion of the written decision appears to accept that the record of pain treatment corroborates Plaintiff's testimony. *See id.* On review, it is not the Court's job to pick through the record and search for inconsistencies which are not explicitly referenced by the written

decision. *See Brown-Colvin*, 806 F.3d at 494 ("Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and ours only to review."). Under Ninth Circuit law the Court is "constrained to review the reasons the ALJ asserts," and therefore the Court is not persuaded by the Commissioner's arguments that positive pain treatments undermine Plaintiff's credibility because the written decision does not assert those pain treatments as grounds for evaluating her credibility. *See id.*

Additionally, the Commissioner argues that, since Plaintiff was able to work in 2016 and scans of her spine do not show significant deterioration, this evidence undermines Plaintiff's pain testimony. [AR 33]. However, the record is replete with objective evidence that, since 2016, Plaintiff has undergone major surgery after which she never returned to full-time work and has reported continually increasing pain. [AR 51-56]. Therefore, the record as a whole does not support the inference urged by the Commissioner that the scans must somehow show that her condition since the alleged disability onset date is the same as 2016 when she was able to undertake substantial gainful employment. Accordingly, even if the written decision had based a credibility finding on the scan and Plaintiff's work history, that analysis would not be based on substantial evidence within the record.

Additionally, the Commissioner's brief relies on Ninth Circuit precedent to argue that an ALJ may find a plaintiff's pain testimony not credible because that plaintiff could work at a prior time with a similar condition. [Dkt. 8 at 2.] However, each of the cases cited by the Commissioner are distinguishable and unpersuasive, because in those cases the court considered evidence beyond just the consistency in the plaintiff's scans to evaluate the plaintiff's credibility and in each of the cited cases the plaintiff did not allege that their pain worsened from the time period when they worked (unlike the record and Plaintiff's testimony here). *See Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988) (holding that the ALJ's determination that the plaintiff's lower back problems did not make her disabled was supported by substantial evidence because her back condition had "remained constant" from when she was previously able to work *and* her testimony of her physical capacity indicated she could complete her past work) (emphasis added); *Schoonmaker v. Colvin*,

No. 6:14-cv-01962-HZ, 2015 WL 6658669, at *2, *6 (D. Ore. Oct. 30, 2015) (emphasis added) (holding that of the five reasons the ALJ asserted for discrediting the severity of the plaintiff's symptoms, the ALJ's contention that the plaintiff's *symptoms* had not changed since the plaintiff was able to complete work was supported by substantial evidence); *Torres v. Colvin*, No. CV-16-02563-PHX-DGC, 2017 WL 1437584 at *12-*13 (D. Ariz. Apr. 24, 2017) (holding that the ALJ's assertion that the plaintiff's ability to work with the same underlying disability undermined her credibility was not supported by substantial evidence because the ALJ did not sufficiently explain why the plaintiff's impairment was present at the "same level of severity" as when plaintiff had worked prior and because the plaintiff had been laid off because of her impairment).

By contrast to the precedent cited by the Commissioner, here Plaintiff testified that the severity of her pain has increased significantly since she underwent major surgery at the end of 2017. [AR 51-56]. Additionally, while the Commissioner argues that Plaintiff was able to engage in SGA until 2022, [Dkt. 8 at 2], the Commissioner ignores the record evidence that Plaintiff worked part-time from home during the 2018 to 2022 period, with modified work duties so that she could lay down throughout the day. [AR 53]. Therefore, unlike the precedent cited by the Commissioner, here Plaintiff's work history does not undermine her subjective pain testimony. Fundamentally, the Commissioner's arguments do not acknowledge or explain why Plaintiff's work history from seven years earlier contradicts Plaintiff's testimony now, where her work history was prior to major spinal surgery after which Plaintiff testified continually increasing severity of her pain. The Commissioner's argument suffers from a logical leap between the cited evidence that the MRI shows stability since 2016 and the Commissioner's unsupported conclusion that Plaintiff's pain and symptoms must somehow have remained constant since 2016 (despite the other objective medical evidence of other surgical procedures and increasing pain in the intervening time). And the Commissioner's argument suffers from a further logical leap from the evidence of Plaintiff's work history in 2016 to the Commissioner's argument now that Plaintiff must somehow have the same or similar ability to work now (again with complete disregard for the evidence of medical procedures and increasing pain in the intervening time).

For the reasons discussed herein, the Court finds that the ALJ erred in the determination of

United States District Court
Northern District of California

Plaintiff's RFC based on the legally erroneous discounting of Plaintiff's testimony. On remand, if the ALJ makes credibility determinations to discount specific testimony, the ALJ should cure the defects noted in this Order and follow Ninth Circuit requirements.

## II. WHETHER THE ALJ ERRED IN FAILING TO CONSIDER MEDICAL TESTIMONY

Plaintiff next argues that the ALJ erred by not considering the testimony of Dr. Bhullar and Dr. Salamacha. [Dkt. 7 at 6-13]. The Commissioner argues that the ALJ was not required to discuss the medical opinions of Dr. Bhullar because his opinion, reflected in two treatment notes, preceded the alleged onset date of Plaintiff's disability and included restrictions that "appear[ed] to be at Plaintiff's request," and which were "temporary assessments of Plaintiff's limitations." [Dkt. 8 at 4]. The Commissioner argues the ALJ was not required to evaluate the medical opinion of Dr. Salamacha because "there is no record of the exam itself, just the summary" and because the exam was conducted prior to the alleged onset date.

When reviewing a plaintiff's medical record an ALJ "must articulate how persuasive it finds **all** of the medical opinions from each doctor or other source." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (emphasis added) (quotation omitted). When evaluating the persuasiveness of medical opinions, the most important factors ALJs consider are "supportability" and "consistency." 20 C.F.R. § 404.120c(b)(2) (2017). Therefore, ALJ's decisions must "explain how [they] considered the supportability and consistency factors" in their evaluation of the persuasiveness of a medical opinion. *Woods*, 32 F.4th at 791 (quoting 20 C.F.R § 404.1520c(b)(2)).

Indeed, under the Northern District's precedent, error has been found where an ALJ failed to address medical opinions preceding the alleged disability onset date. *Brown v. Berryhill*, No. 17-cv-02834-JCS, 2018 WL 4700348, at *19 (N.D. Cal. Sept. 29, 2018) (holding that the ALJ erred in not addressing the medical opinions of three of the plaintiff's doctors who treated plaintiff years before his alleged disability onset date because the ALJ was "required to consider all of a claimant's medical evidence").

The Ninth Circuit has held that medical opinions which precede the alleged onset date cannot be ignored entirely, even if such opinions are often of "limited relevance." *Williams v. Astrue*, 493

United States District Court
Northern District of California

Fed. Appx. 866, 868 (9th Cir. 2012) (holding that the ALJ erred in "silently disregarding" the medical reports of two of the plaintiff's doctors because even though these reports predated the alleged disability onset date the ALJ still "must consider all medical opinion evidence").

Even the cases cited by the Commissioner recognize that medical opinions predating the onset date have "limited relevance". [Dkt. 8 at 5 (citing *Carmickle v. Commissioner*, 533 F.3d 1155 (9th Cir. 2008) and *Ahearn v. Saul*, 988 F.3d 1117 (9th Cir. 2010))]. To the extent the Commissioner relies on *Carmickle* and *Ahearn* to argue affirmance, these cases are distinguishable. In *Carmickle*, the Ninth Circuit held that the ALJ did not err in discounting the medical opinion of one of the plaintiff's doctors because the opinion was prior to the plaintiff's injury resulting in his alleged disability, and the examination was given during a time the plaintiff was working two jobs without complaint. 533 F.3d at 1165. The court also noted that a medical opinion preceding a plaintiff's alleged onset date is especially unpersuasive when the plaintiff's "disability is allegedly caused by a discrete event." *Id.* Here, by contrast, Plaintiff's disability is based on numerous conditions (some having no direct connection to her back issues and surgery, such as a kidney issue and lupus) and ongoing increasing severity of symptoms over years.

Similarly, in *Ahearn* the court ruled that the ALJ did not err by giving "minimal weight" to the opinion of a doctor from three years prior to the plaintiff's disability onset because the assessment's timing was "remote." 988 F.3d at 1117-18. However, in both cases cited by the Commissioner, the ALJ in each case, while discounting the doctors' opinions, did not ignore them entirely but considered the opinions and explained why the doctors' assessments were not persuasive.

By contrast, here the ALJ's written decision did not discuss the opinions of Dr. Bhuller and Dr. Salamacha at all, and (unlike in *Carmickle and Ahearn*) failed to even give those opinions "minimal" weight and failed to explain why they were being disregarded. The written decision's failure to discuss these two doctors' opinions renders completely opaque whether the ALJ even considered these opinions, whether the ALJ found either of them to be of any (even minimal) weight, whether the ALJ found either of these opinions to be more or less persuasive in light of other evidence, and why the ALJ ignored these two opinions completely in the written decision. The

written decision provides no means for the Court to review the ALJ's decision-making process with regard to these two medical opinions.

Further, the Commissioner's argument now that the ALJ did not need to consider these two opinions because they were developed before the onset date is not supported by the record. That is, the ALJ himself never stated in the written decision that he was disregarding these two medical opinions on the grounds that they preceded the onset date. In fact, it is not even clear if the ALJ found these opinions of little weight because they were prior to the alleged onset date, since this argument is only provided by the Commissioner's counsel in their brief. The Court is constrained to review the reasons asserted by the ALJ, and not reasons which nowhere appear in the record and which are essentially fabricated after the fact on review. *See Brown-Colvin*, 806 F.3d at 494. Accordingly, the Commissioner's argument that the ALJ was justified in not considering these two medical opinions are legally unpersuasive. On the actual record presented, the ALJ erred by failing to articulate how persuasive he found all of Plaintiff's provided medical opinions, including the opinions of Dr. Bhullar and Dr. Salamacha.

For purposes of judicial efficiency, since the Court already found harmful error that is cause to remand this case as discussed above, the Court **ORDERS** the ALJ on remand to cure the defect discussed herein and to consider all the medical opinion evidence, including the opinions of Dr. Bhullar and Dr. Salamacha. *See Shawna N-M. v. Comm'r of Soc. Sec.,* No. 3:23-CV-5677-TLF, 2024 WL 3409377, at *4 (W.D. Wash. July 15, 2024 ) ("Because the Court has already found reversible error… the Court need not determine whether the ALJ's step two finding was harmful error.").

## III. WHETHER COMMISSIONER'S STEP FOUR DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

Next Plaintiff argues that the ALJ erred by rejecting the vocational expert's testimony that Plaintiff was unable to work in her prior job. [Dkt. 8 at 13-15]. During the hearing, the vocational expert testified that a hypothetical individual with Plaintiff's age, education, job experience, and with the residual functional capacity to sit for six hours, stand for two hours, walk for two hours, lift

and carry ten pounds occasionally (and less than ten pounds frequently) could not complete their prior work as a sedentary accountant. [AR 64-65]. The vocational expert further attested that this hypothetical individual would be unable to complete their prior work because of the limitation of being able to lift "less than ten pounds frequently." [AR 65]. In response to the ALJ's questioning, the vocational expert testified his determination was consistent with the *Dictionary of Occupation Titles*. *Id.* The ALJ did not ask any further questions of the vocational expert and did not ask the vocational expert to explain *why* his testimony was consistent with the *Dictionary of Occupation Titles*. *Id.*

In step four of the legally required analysis, the ALJ's written decision found the vocational expert's testimony inconsistent with the *Dictionary of Occupation Titles* and, on that basis, rejected the vocational expert's analysis. The written decision found that, under the standards of the *Dictionary of Occupation Titles*, Plaintiff could complete her prior work. [AR 35-36].

An ALJ may rely on the testimony of an impartial vocational expert ("VE") or on the *Dictionary of Occupation Titles* ("DOT") to aid in their determination of whether a claimant, based on their residual functional capacity, can complete their prior work or other jobs in the national economy. SSR 24-3p. While the testimony of a VE and the DOT "generally should be consistent . . . neither the Dictionary of Occupational Titles nor the vocational expert evidence automatically trumps when there is a conflict." *Massachi v. Astrue*, 486 F.3d 1148, 1153 (9th Cir. 2007) (quoting SSR 004-p). The ALJ "has an affirmative responsibility" to ask about conflicts between the VE and the DOT and if there is a conflict the ALJ "will obtain a reasonable explanation for the apparent conflict." SSR 004-p (applicable at the time of the hearing here); *see also Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) ("An ALJ must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the Dictionary."). Thus "to avoid unnecessary appeals, an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017); *see also Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) ("The ALJ is not absolved of this duty merely because the VE responds "yes" when asked if her testimony is consistent with the DOT.").

The written decision relied on the VE to determine Plaintiff had worked as an accountant in both sedentary and light levels. [AR 35-36]. However, the ALJ chose not to rely on the VE's testimony that Plaintiff could not complete her past relevant work because of the asserted conflict with the DOT, Social Security Rulings (SSR) 83-10, and 20 CFR 404.1567(a). [AR 36]. As the written decision noted, the DOT states that sedentary workers are required to occasionally "exert up to 10 pounds of force" and frequently exert "a negligible amount of force." [AR 36]. Therefore, the VE's testimony that an individual who could lift less than 10 pounds frequently would be unable to work in a sedentary role facially conflicts with this DOT standard. *See* AR 36, 64-65.

As noted, the Ninth Circuit requires that, during a hearing, an ALJ must ask for an explanation if a VE's testimony obviously conflicts with the DOT. *Gutierrez*, 844 F.3d at 808. While the Ninth Circuit has recognized that a clear conflict may not exist where a plaintiff has a partial limitation with regard to one of the DOT's requirements or if the action is an uncommon requirement within the role, those conditions do not apply here. *See id.* at 807-09 (finding the DOT requirement of "frequent reaching" for the cashier role did not clearly conflict with VE testimony that the plaintiff could work as a cashier despite having limits in overhead reaching in her right arm"). Here, the VE's testimony indicates that sedentary roles require frequent lifting of more than 10 pounds which is not a niche or partial limitation in the DOT's requirement but rather is diametrically inconsistent with the DOT's lifting requirements for sedentary roles. [AR 65]. Therefore, the ALJ had an affirmative duty to ask for an explanation for this conflict to determine if there was a reasonable reason why the VE found Plaintiff was unable to meet the requirements of her prior job based on her lifting limitations. *See* SSR 004-p (applicable at the time of the hearing in this case).

For purposes of judicial efficiency, since the Court already found harmful error that is cause to remand this case as discussed above, the Court **ORDERS** the ALJ on remand to cure the defect discussed herein and to consider the conflict between the VE's testimony and the DOT.

## IV. WHETHER THE APPEALS COUNCIL PROPERLY EVALUATED THE NEW AND MATERIAL EVIDENCE SUBMITTED BY PLAINTIFF

Finally, Plaintiff argues that the Appeals Council failed to properly evaluate the Progress

Notes and Work Status Report of Dr. Vincenzo Vitto dated July 25, 2024, and that the case should be remanded for the ALJ to consider this evidence. [Dkt. 8 at 6]. The Appeals Council did not consider this evidence because the medical opinion was dated after the ALJ's decision on April 9, 2024, and therefore the Appeals Council found this additional evidence did not "relate to the period at issue." [AR 2].

The Appeals Council will consider additional evidence submitted by a claimant if there is "good cause" for not submitting the evidence prior to the ALJ's decision and if the evidence is "new, material, and related to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970; *see also S.C. v. Kijakazi*, No. 20-cv-07949-SV, 2022 WL 22955319, at *10 (N.D. Cal. Apr. 19, 2022). "Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." *Taylor v. Comm'r of Social Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011). Claimants have the burden to prove their new evidence should have been considered by the Appeals Council. *Garcia v. Saul*, No. 1:19-cv-1103-JTL, 2021 WL 223205, at *4 (E.D. Cal. 2021).

Here, Plaintiff has not met her burden of proving that the evidence should have been considered by the Appeals Council. In November 2020, the applicable regulations were amended to require claimants submitting new evidence to the Appeals Council to not only show their additional evidence is new, material, related to the period at issue, and reasonably outcome changing, but also to show that there is good cause for the evidence to have been submitted after the hearing date. 20 C.F.R. § 404.970. Here, Plaintiff's counsel has not provided any argument as to why there is good cause for the medical report's late submission, and therefore Plaintiff has not met their burden for purposes of this review.

However, because the Court has found error requiring a remand in this case, the Court **ORDERS** the ALJ to allow Plaintiff on remand to submit evidence (if she desires) to show good cause why this new evidence was submitted late and, for completeness of the record, **ORDERS** the ALJ to determine on remand whether or not this evidence is properly submitted and considered even though it is late, following the applicable regulations. *See, e.g.*, *Lynch v. Berryhill,* No.

216CV01849RAJDWC, 2017 WL 4570756, at *8 (W.D. Wash. Aug. 16, 2017), *report and recommendation adopted*, No. 216CV01849RAJDWC, 2017 WL 4551023 (W.D. Wash. Oct. 12, 2017) (stating that the Court "recommends, on remand, Plaintiff be allowed to submit new evidence to the ALJ, including the evidence submitted to the Appeals Council"). If the ALJ determines that there is good cause for submitting this new evidence late, and if all other conditions under the regulation are satisfied, then the ALJ on remand shall consider and analyze this new evidence on the merits.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision in this matter is **REVERSED** and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

This Order **RESOLVES** Dkts. 7 and 8.

**IT IS SO ORDERED.**

Dated: September 30, 2026

PETER H. KANG
United States Magistrate Judge